1856-34 Everett Stables, Inc. v. William Rambicure, et al. Arguments not to receive 15 minutes for plaintiff, 15 minutes to be shared by defendants. Mr. Orenstein for the appellant. Good morning. Good morning, Your Honor. John Orenstein for Everett Stables. In this attorney malpractice case, Everett Stables has asserted three damages theories against the defendant Rambicure and his law firm, the Rambicure defendants. And if as to any one of those theories, there is a genuine issue of material fact, this matter should go back to the district court for a jury trial. We actually believe there are issues of fact as to all three. I'd like to walk through what those are and then spend part of my time on procedural posture of this, how this came to be an order directed at the plaintiff for summary judgment on grounds that no one moved on. And then if time permits, spend a little time on the bad faith claim against Zurich Insurance. So let me begin with damages. The first item is a commission. Recall the basic factual setting is that Everest receives advice that if it goes to this auction and sets a reserve on the horse, an R&A, it will be within its rights under its contract with Crestwood and it won't have any liability to Crestwood. And that turns out not to be so. Now, there are fact issues as to liability, but that's the basis of the liability claim. And in fact, Everest is not within its rights and owes Crestwood a $219,000 commission on a sale that didn't happen. For most of us, that sounds like, I believe, a pretty basic damages claim. I had to lay out $219,000 to somebody on a sale that wasn't consummated. But the district court's position was, now wait a minute. If that sale had taken place, you would have paid a $219,000 commission. Why, that seemed like a good point. Well, I liken it to a homeowner, let's say. I make a deal with a real estate broker that you'll sell my house in 90 days and I'll pay you a 5% commission. And suppose somebody comes along and offers $500,000 for my house and I take it. I have $475,000 of net proceeds. But let's say I don't take it and the 90 days goes by. The broker says, you know, I did my part. You owe me $25,000. Setting aside whether I had bad advice or why all this happened, I pay the broker $25,000. Yes, I still have my house, but I don't believe there's a homeowner anywhere who would say, I'm just as well off paying the broker $25,000 for a sale of my house that didn't happen as I am in getting $475,000 of net proceeds. The theory of liability was that the sale should have gone through, right? That's correct, and I should have had the net proceeds. If the sale should have gone through, then you'd have to pay a commission on the sale. But I pay it out of net proceeds. The net result is that I have $655,000. And instead, the net result is I have the same horse I had before, but I had to pay $219,000. Now, I'm not saying that that's a slam dunk with a jury. But I am in the posture here where all I have to show is that there are reasonable inferences that a jury can draw on my behalf. And I think the average juror would say those are not the same thing. Having $655,000 net is not the same as having my horse and losing $220,000. And I think a jury would be entitled to say that's a damages item. How about the attorney's fees point? Okay. The attorney's fees, again, here's why I think that's a jury question. The Crestwood v. Everest case is premised on the advice that Everest got under the contract. It's really a referendum on whether that advice was correct. I'm overstating a little bit because the Crestwood case involved some other issues. But as to some of those, the attorney's fees were discounted to take that into account. So there was a piece of that case that had nothing to do with the contract, and the attorney's fees were discounted 20%. As to the rest of it that did have to do with the contract, a large part of that clearly related to this Philly and this September 2009 auction. And it's very much interrelated, intermeshed with other issues. That, I think, takes us to the rule where if you can show the fact of damage, the jury is entitled to sort out just how much of it is due to the issue at hand. Remind me how fee shifting worked in this case. What was the source of fee shifting? Was that just a Kentucky law point or a contract? It was a contract. It was under the contract. So, yes, the contract that really was at the heart of the suit, the suit was vindicating the rights under the contract. It turned out that those rights couldn't be vindicated, and there was an automatic fee shifting. That's why he was subject to it. So the jury can sort out whether that was, how much of that was due to the Stormcat Philly issue, and even how much of that was due to Everest's own decisions versus Rambicure's advice. It's a classic comparative fault issue. And your third one is sale price. Yes. Really sale price minus residual value. In our reply brief on our motion for summary judgment, we acknowledged that there is residual value to the horse of $100,000. So let's call it a half million dollars proceeds net of the horse itself. Doesn't that go against your argument that you did not have notice of the damage objection to your complaint, the fact that you addressed it in your reply brief? Doesn't that kind of go against your argument that you're prejudiced without having noticed that the judge may grant summary judgment on the issue of damages? Well, let me explain. I'm glad we got to that question at this point in the argument. I think that's very important. Well, that's how you start out your brief, I think. I know, but I didn't start there today. Well, no, there's a difference between the kind of notice we got and the kind of notice we should have had. The brief in opposition to our motion for summary judgment said that one of the reasons summary judgment should not be granted is that there's a damages issue. And we said, I think correctly, there's a mitigation of damages issue. So you have a horse. You have it for eight, nine years. The damages issue is you could have sold it. Maybe you made money on it. But in some respect, either you could have mitigated your damages or you did. And we say that's a fact issue. That's not a ground for we sufficiently moved for summary judgment based on damages. They challenged it, saying it raises a whole bunch of fact issues. And the question is, should we have supplemented? You're confusing me now. I didn't think that damages was the issue on summary judgment either way. I thought that's what you argued, that the judge, Sui Sponte, decided on damages and that the motions did not move for summary judgment on damages. You just told me you did. Is that right? We moved for summary judgment on liability and damages. That's correct. So the judge rules against your motion and grants it to the opposing party. There's nothing wrong with that, is there? Here's the problem, Your Honor. When you move for summary judgment, you don't have to and you don't tactically put in all your evidence that shows all the facts that you could marshal on your behalf. You put it at issue, and once you put it at issue, you're on notice that the judge in his authority may rule against you on the issue that's all of a sudden in front of him. Well, Your Honor, I believe we weren't on notice that we had to put in all of our evidence on this point. And here's one of the reasons why. There's a little bit I'd like to add to the record. When you get to the transcript on the hearing, you see the judge talking about our damages theories, upset about our damages theories. It's pretty clear by the close of that that we're not going to get summary judgment. And then there's a pause. People go off the record. And then there's discussion about two things, a potential settlement conference and discovery issues before the magistrate. Are you repeating a conversation not on the record? Is that what you're about to tell us?  They go off the record and then they go back on the record. And the record reflects that there is discussion between counsel and the court about discovery issues before the magistrate judge and the settlement conference that could potentially happen. And the judge says, well, if there's going to be a settlement conference, there will be discovery after that. There won't be any discovery until after that. If there's not going to be a settlement conference, go ahead and make your report to the magistrate. And whatever discovery he orders, he orders, and that's what we'll do. And so I believe plaintiff's counsel came away from that hearing believing we're not going to do very well on our motion for summary judgment. We're probably going to lose. But that means we're going to lose. We're not going to not proceed with discovery. It looks very much like the court's creating the expectation that the case will proceed to discovery and go to trial. You're still stuck with the problem that there has to be some evidence to satisfy each element of the claim. Just go back to sales price and just help me out with that one. So on sales price, you still have the horse. The horse isn't sold, so you only have damages if the horse is worth less than what you would have gotten with the sale. Where is that evidence? The evidence is the passage of time. The evidence is what the horse is worth at the time of that summary judgment hearing, not the day after the auction. Where is that evidence? You said the evidence is the passage of time. That's not evidence of damages. Tell me when. You have to show that at some point this horse was worth less, maybe at that exact moment, and therefore your damages are what you would have gotten had the $875,000 sale or whatever it was gone through. Are we on the same page in terms of damages? Where is that evidence? I'm saying a reasonable jury can infer just from the passage of eight years that the horse is worth less than it was in September 2009. I wouldn't say the exact opposite. Inflation, there's lots of things that could make prices go up. Go ahead, Judge Guy. Also in that regard, the horse could have been earning money for you during the period of time that you held him in any number of ways, and that would have to go into the equation also. The issue, though, is whether at that stage it was our burden to show that the horse didn't make money, or did we, prima facie, put in enough evidence in the record to show that there was a reasonable inference? Again, this is all about... I just want to make sure I've got your theory. You'll get rebuttal, but your theory is passage of time, eight years, suffices to show that there was some damage from the failure to sell it at $875,000 eight years earlier. That's the damages evidence? In opposition to a motion for summary judgment, yes.  Okay, Judge Griffin's got a question. I have a question about the insurance company. I don't see how you've got a claim at all against the insurance company. This is a claims-accrued policy for claims after June 1, 2012. All this stuff happened before June 1, 2012. You have no contract, you have no relationship with the insurance company. For this period of time, to me, it looks like a frivolous claim and a frivolous appeal. Tell me why it's not. Because the bad faith statute in two places... How can you have bad faith that there's no relationship, there's no duty of the insurance company to your client for periods before June 1, 2012? How does a duty arise when there's no contract for that period and no relationship, really, for that period? The statute applies to third parties claiming that they have coverage. Claiming they have coverage, even though it really is a frivolous claim, because you admit in your brief there is no coverage. You can read the policy and see there's no coverage. But you say, because I claim something that is just totally unreasonable and totally frivolous, that puts them on a duty to act in a certain way to me just because I made a frivolous claim to them? Is that your argument? At the time that we made it, I don't believe it was. How was it not? It's clear from the policy that there's no coverage there. I don't think that... What would be your point today? Forget what was argued in the past. What would be your point today to deal with this problem? My point would be that insurers have an obligation under the statute to behave a certain way when denying coverage. Anybody who files a claim, I don't have a policy with Zurich, but I claim I do, and then I can sue them if they don't respond to me within 30 days. I have no relationship, they have no duty to me. And that's your position? It's promptly and within a reasonable time, and I think you have some rights, because otherwise denial of a claim... Where does the right arise? Where does the duty arise if there's no relationship? If we were so clearly not covered, I still don't understand why it took two years to tell us so. Well, they did tell you orally, did they not? You say that they also should have given you a letter. Didn't the adjuster tell you right away that there's no coverage under this policy? I thought that's what the facts were. And later, Miller and Wells said, we're working with the insurer to determine, confirm that there, in fact, is no coverage. You were told orally, there is no coverage. I mean, there was no ambiguity about that. I think Miller and Wells created the ambiguity later. Let's hear from the appellee. You weren't even going to make this argument, so I think that says something. Judge Guy, is there anything you wanted to add for the appellant and their opening argument? Well, just one on the point about the commission. The reference that counsel made, the analogy to a real estate sale, I don't think is very helpful to his cause because if you list your house with a broker and he gets a full-price offer and then you refuse to sell, there's no doubt that you owe the commission. Now, at an auction sale, that's a little different, but that's the purpose of a reserve clause, to protect you against that. And the contract you made provided that there wouldn't be a reserve clause. It's not a helpful argument. Well, my only point, Your Honor, and if it's not helpful, it's not helpful, is that the two situations are not the same when the smoke clears for the party who would have sold, and I think a juror would understand that. Okay, well, you'll get your full rebuttal. Let's hear from the appellees. Thank you. May it please the Court. Good morning, Your Honors. My name is Kevin Clarson. I'm here on behalf of three of the appellees in this case, Bill Rambecure, Rambecure Law Group, and Miller Wells. Appellee Zurich and I have agreed that we would take 10 minutes. Zurich would have five minutes of appellee time. We are here today... I think we understand your point on the sale. I think we understand your point on the commission. How about the attorney's fees? That seems a little harder to pin down, and all you need is a tribal issue of fact, right? So that's the problem you're dealing with. So tell us why there's no tribal issue of fact on the attorney's fees. A couple reasons, Your Honor. The first is, and let's go back, because I think this is relevant to the questions that were asked of the appellant when they were up here. Keep in mind that it wasn't just Miller Wells and Rambecure that moved for summary judgment. They moved for summary judgment as well, and they've argued in their brief and up here as if they didn't have a duty to prove all those elements of the claim. For purposes of my question, let's assume the damages was the very first thing everyone briefed, it was the very first thing everyone talked about. So if you could just put the procedural hiccups to the side, I'm happy to go back to that, but I'm not even actually sure how that necessarily helps you for what it's worth, but let's just pretend it's totally teed up and just talk about that issue. There was a complete absence of proof, as the district court showed, as to what attorney's fees resulting from the loss of the underlying Crestwood case arose because of any action or advice that Mr. Rambecure gave to Everest. Okay, so I think the response to that is your client's advice was about what you could do on these bids. There's contractual language about that, and he says you can go and do this stocking bid. It turns out not to end well. Part of the litigation between Crestwood and Everest is about this exact point, and the contract has fees shifting, and I don't know how we can deny that some of those fees grow directly out of that advice. That's what I'm missing. Maybe not all of them. Maybe it's a small part of it, but he's right on the other side that that part is a jury question. The question is whether there's enough to meet the element of the claim to get past summary judgment, and I guess I'm struggling with why there's zero damages.  on the fees that were awarded, Your Honor, was because the malpractice, the fees that they were arguing for for summary judgment were fees relating to the litigation advice, the litigation loss, not just Mr. Ranbocure's advice that led to the litigation in the first place. I realize it wasn't just. That's the whole point of it's a big mess and the jury would have to figure out what part is attributable to his advice about the meaning of the contract. I get that. But what I don't understand is how you can take that out entirely from the fee award. That's the part I'm struggling with. I think you can take it out, Your Honor, because again, when asked if there was any . . . Let me say it in a couple of different ways. First, there needs to be proof when they affirmatively move for that damage of what the fees were and should there be any shifting. There wasn't, and the district court was right. There was no guidance, no evidence, put in the record by Everest as to if there was $1 attributable of those fees that were awarded to Mr. Ranbocure versus litigation counsel. In relation to being then put on notice that there wasn't any damages proof in the record that the district court asked to see before it ruled on summary judgment, Everest had at least two months between the hearing and the ruling to, as other cases that we've cited relating to summary judgment, supplement the record, ask for reconsideration. They did none of that. Instead, they continued to litigate the case. They filed a motion to exclude our expert. They had the opportunity under their theory that this was a sua sponte ruling, even on the damages, that they could have sought additional proof in the record, asked for additional discovery, done other procedural things to bolster their case. They didn't. So tell me what I'm missing if I think this way. If I think that you're allowed to say the damages are that the contract had fee shifting, we have litigation, there is fee shifting, and the fee shifting relates to four topics, one of which was the advice about what you could do with the contract in terms of stocking bids. At that point, that's all. This is what I'm asking you now. I would have thought that's all you need to do to get past summary judgment. I would not have thought you would need to have an evidentiary hearing at that point as to whether it was just a couple hundred dollars that were attributable to the bad advice or several thousand dollars. I would have thought that was something you dealt with later. All you had to do was show there was some damage. Well, true, and I agree with Your Honor.  Didn't they do that? They did not, Your Honor. What do you mean? They said the damages are the fee shifts. Why isn't that saying it? To make an argument is not proof, and at the summary judgment stage, either in response to my clients... Is there not evidence about the fee ward? There is not, Your Honor, other than the Crestwood case saying there was fees, but in order to put that and affirmatively then be awarded damages on something that Mr. Ramachur did or did not do, there needs to be proof as to how that's attributable. Is that judgment attached as an exhibit? No. What I'm saying, Your Honor, is, and these are questions that the district court asked, is if the district court is being asked to award a component of damages against Mr. Ramachur, the attorney's fees, then there has to be something more in the evidentiary record when you're moving for summary or defending against summary as to what those damages are and the proof of those damages. What beyond the amount of the judgment did they have to show? Questions that were asked by the district court that would have been appropriate to put in the record would have been the attorney's fees, the actual bills from counsel that would have broken down the part of the case that relied upon Mr. Ramachur's advice or if there were some litigation advice that Mr. Ramachur gave to them that they were then claiming was part of the reason those fees were incurred in the first place. The fees were incurred by Crestwood, were they not? These are Crestwood's attorney fees that Everett Stables is required to pay? Yes, Crestwood would have them. So Everett Stables doesn't have all that... I guess maybe they could have gotten it through discovery or something. I mean, you're looking at the opponent's attorney fees that all of a sudden have to be paid, right? Yes, but that would be relevant in a case such as ours underneath where if you're seeking attorney's fees, Crestwood paid something, I assume, because that wasn't put in the record either, for those fees. They must have paid the $280,000 or something that they were awarded that Everett had to pay them, right? Presumably, but that wasn't in our record either, Your Honor. Well, where did the figure come from? It would have come from the original Crestwood decision in the ruling of Judge Caldwell. Okay. So you need in the record the judgment against Everest on fees, right? We're all in agreement that somehow you need evidence of that, whether it's judicially noticeable or not. But then you go beyond that and you say you then have to put in some evidence that explains what part of that fee award is attributable. And what if that's basically unknowable without a mini hearing? I mean, because I would have thought the whole point is you've just got to show some damages to get to a jury trial. You don't have to decide whether it's $1 or $100,000. And I would have said the judgment plus the reality that one of the theories of malpractice was the bad advice about whether you could do this bid. I would have thought that was enough. I mean, do you have a case that says no? You really have to spell it out a little more. Well, and maybe I'm confusing the court with what I really mean by spelling it out. Let's take it back to this. We all know that other than saying I'm damaged, you have to put affirmative proof in the record. So even if, and to piggyback off Judge Griffin's question, other than the public record of Crestwood 1 awarding a fee, that doesn't mean there was actually payment. One thing we would have expected... Did you respond in your briefs? There's no evidence that there actually is a fee judgment, a fee-shifting judgment that Evers has to pay? Just to clarify, are you talking about the summary judgment briefs below? Any briefs below. In our briefs, we did... Did you all say this is a fiction that never happened? No, we didn't say that. In our briefs, we moved for summary judgments on all our claims. And what we argued on the damages component was there was no damages, regardless of... And at the time, when we were briefing this, both for our original summary judgment and then their summary judgment, the bucketization of these really occurred as that progressed. So we never argued when Mr. Rambicure filed his original summary judgment motion a year and a half before the ruling, as this case progressed, that these particular buckets were not proven. We just simply argued that there's no cause and effect here because there hasn't been any damages proven. At that point, Evers didn't have an expert. They didn't have declarations from their principal. That came later on, and then we responded that there's still no proof of damages. For example, Mr. Nielsen himself could have, in his declaration, said, I confirm that I paid X number of thousands of dollars in the attorney's fees award to Crestwood. That was missing. Instead, they wanted to argue the other damages issues your honours have asked questions about, say, the sale price and the commission and all those kind of things. If we could go just a few more minutes. We're taking time from Zurich, but I don't think we have as many questions for you for what it's worth. Just treat me as the trial judge, for the sake of argument. I'm a busy trial judge. I've got a lot to do. I just want to know what this is really about. You're not here to say, this is just fiction, we're just like, how do we deal with this problem today? You're not here to say that there wasn't a fee, attorney's fees judgment against Evers. You're not going to say, where is that document? Let's put it in evidence. You're not going to say that. So there clearly was damages to Evers. One of the theories of damages was malpractice from that advice. Now, do you think at summary judgment, to decide whether this claim moves on, we have to decide whether at least one dollar of that couple hundred thousand dollar judgment was attributable to the advice about the meaning of the contract? Would you then say, yes, we need that proof? Yes, judge, and that's what the district court also indicated. How can you . . . so you have to go through all the bills at that point? Otherwise, how would there be proof? I think my answer would be, you show me how none of it was attributable to this. You're saying it would be my affirmative duty to show it wasn't. That would be my instinct. It seems so common sense that some of it must have been attributable to that, and it seems so weird to sort it all out at summary judgment when the only question is whether you move on to juries that do get to sort out. In response, Your Honor, summary judgment is more than, to use your term, common sense. Again, it wasn't just us moving for summary. Everybody had the burden to put in all their proof.  whether it's commission, which in the argument in front of the district court, they admitted they didn't have that damage. We're already in the red light, so I'd stay with the questions. Judge Geid, do you have any questions? No, thank you. Judge Griffin, I think you had one. Go ahead if you had one more point. I was just going to finish, Your Honor. I realize it's a little different bucket than, say, evaluation of the horse, which is the other bucket, but there's still an affirmative requirement of proof, and the public record that there was an award made doesn't meet a proof standard. I couldn't walk into a trial court as an advocate for my client, regardless of the damage that I'm arguing, and just show the jury this was an award from four or five years ago. That doesn't meet an evidentiary proof of damage at trial, and it doesn't meet the evidentiary proof of damage to survive summary judgment. Thank you. Thank you, Your Honor. May it please the court, counsel. I am Mike Risley here on behalf of Zurich Insurance Company. On December 17, 2014, Zurich informed Evers Staples through Mr. Wernstein, its counsel, that there was no coverage for this claim. That was in an email which stated there is no coverage for this matter under the Zurich policy. Mr. Miller of Miller Wells emailed Mr. Wernstein on the same day and said that he had talked with the representative of Zurich, and that, quote, she made it clear to me that there was slash is slash and won't be any coverage. I think Judge Griffin's questions were apt and accurate. There has never been any coverage for the claim asserted by Evers Staples. There was never any duty on behalf of Zurich to investigate or do anything else with regard to a claim that there is no coverage. Kentucky law is clear that there is no claim for bad faith in terms of when there is no obligation to pay into the policy. The other claims asserted were properly dismissed by the district court. I'd be happy to answer any questions, but I believe that, in fact, it is a frivolous appeal. Judge Guy, do you have any questions? Nothing further. Thank you. All right. Thank you. Appreciate it. Mr. Wernstein, you have your rebuttal. Your Honor, I'll only address the attorney's fees provision and the fee-shifting damages we've actually hit upon. The point where we agree with the district court judge. During the argument, the district court said that he thought, and this is on record page 2162, he said it may be that I'll simply let the parties argue the apportionment of that 272, and he said it would seem like a really difficult thing for the jury. But neither side is experts. I think you all are experts, so maybe that's just what we'll need to do. The same judge ultimately issued a judgment that wasn't very helpful to you, so we can't rely 100% on him. Well, I can admit when somebody's right, even when it's in my favor. It's not very hard. Seriously, Your Honor, seriously, it has long been the law in Kentucky and here that if you can show the fact of damages, uncertainty about the amount of damages is not sufficient. But, you know, it is a little funny. I mean, just because one of the theories of underlying that 272,000 judgment is attributable to this point, it doesn't tell you that any of the damage is related to that. I mean, that is complicated. And so I could imagine a world in which it is your burden to say, here's why at least 50,000 of it or 10,000 of it or 5,000 of it related. Well, I think that the opinion itself that awarded the damages, it wasn't just a number. There was an opinion that came with it, and the opinion makes it clear that it's talking about all the issues. Oh, does it? Well, that's a fair point. So you're saying that underlying opinion actually says some of the damages grew out of this advice? Does it spell that out? I don't recall that it said the Storm Cat Philly, but it said, first of all, it took out what we call the Passionville part of the case that wasn't contractual, and what was left was contractual, and what was contractual was a combination of one auction and another auction. All right. Well, it's worth looking at the judgment. Yeah. I don't know that the judge was that specific about it, but the impression you get is that they're all sort of bound together once you take out the Passionville part. And clearly the Crestwood case was in large part about the Storm Cat Philly. No one would really dispute that. It even started with Crestwood v. Everest about the right to R&A the Storm Cat Philly, about whether commissions would be old Crestwood in the event that Everest did that. Okay. Judge Guy, do you have any questions? Nothing. Thank you. Okay. Thanks to all three of you. We appreciate your helpful briefs and arguments. Thank you for answering our questions, which we're always grateful for. Thank you. The case will be submitted, and the clerk may call the next case. Thank you.